**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| STERLING SOMERSET, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:16-cv-01589-SGC |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION[1]**

The plaintiff, Sterling Somerset, seeks review of the final decision of the

Commissioner of Social Security denying his application for a period of disability

and Supplemental Security Income ("SSI").  (Doc. 1).  Mr. Somerset timely

pursued and exhausted his administrative remedies, and the case is therefore ripe

for review pursuant to 42 U.S.C. § 405(g).

**I. FACTS, FRAMEWORK, AND PROCEDURAL HISTORY**

At the time he applied for benefits, June 13, 2013, Mr. Somerset was 59

years old.  (R. 28, 65, 66).  He is a high school graduate with one year of college.

(R. 159).  Mr. Somerset previously worked as a bricklayer and a carpenter.  (*Id*.).

Mr. Somerset alleged he stopped working in November 2012 due to high blood

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).
(Doc. 10).

pressure, severe arthritis, COPD, and hypoglycemia. (R. 158). After the Social Security Administration ("SSA") denied his application, Mr. Somerset requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 29, 2014. (R. 33, 76, 82). After the hearing, the ALJ found the plaintiff did not have an impairment or a combination of impairments listed in, or medically equivalent to, one listed in the Listings of Impairments. (R. 22). The ALJ further found the plaintiff retained the residual functional capacity to perform a reduced range of medium work and, while he could perform no past relevant work, jobs exist in the national economy in significant numbers which the plaintiff could perform. (R. 22, 28). In light of these findings, the ALJ denied the plaintiff's request for a period of disability on April 16, 2015. (R. 29).

The plaintiff sought Appeals Council review of the ALJ's decision, which the Appeals Council denied. (R. 1, 14). Therefore, the ALJ's decision is the final decision of the Commissioner of Social Security. The plaintiff then filed the appeal in this court on September 26, 2016, seeking reversal of the Commissioner's decision. (Docs. 1, 12).

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability and SSI. *See* 20 C.F.R. § 416.920(a)(1)-(2). First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v.*

*Yuckert*, 482 U.S. 137, 140 (1987). If the claimant is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or age, education, and work experience. 20 C.F.R. § 416.920(b). If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). The burden is on the claimant to "provide medical evidence showing ... impairment(s)" and the severity of them during the time the claimant alleges disability. 20 C.F.R. § 416.912(c). An impairment is "severe" if it "significantly limits [a] claimant's physical or mental ability to do basic work activities." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); § 416.925; § 416.926. Listed impairments are so severe

3

that they prevent an individual from performing substantial gainful activity. 20 C.F.R. § 416.920(d); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 (The Listings). If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(d). If the impairment does not meet or equal the criteria of any Listing, the claimant must prove that his impairment prevents him from performing his past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (f).

At step four, the Commissioner "will first compare [the Commission's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 416.960(b). If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled. 20 C.F.R. § 416.960(b)(3). If the claimant establishes he is unable to perform his past relevant work, the Commissioner must show that the claimant—in light of his RFC, age, education, and work experience—is capable of performing other work that exists in substantial numbers in the national economy. 20 C.F.R. § 416.960(c)(1). If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled. 20 C.F.R. § 416.920(g).

Applying these steps, the ALJ determined the plaintiff had not engaged in substantial gainful employment since his alleged onset date. (R. 21). At step two,

4

the ALJ found the plaintiff suffered from the severe impairments of scoliosis, degenerative disease of the lumbar spine, degenerative joint disease of the right knee, skin carcinoma, and hypertension. (*Id.*). The ALJ found the plaintiff's seborrheic keratosis, alcohol dependence, and anxiety to be non-severe impairments because they did not cause more than minimal limitation in the plaintiff's ability to perform work related activities. (*Id.*). Next, the ALJ found the plaintiff did not have an impairment or combination of impairments that met or medically equaled any Listing. (R. 22). The ALJ determined the plaintiff had the RFC to perform medium work, as defined in 20 C.F.R. § 416.967(c), with the following limitations: frequent use of right foot controls; frequent climbing of ramps and stairs; no climbing ladders or scaffolding; occasionally crouching, kneeling, and crawling; and only routine and repetitive tasks and simple work-related decisions. (R. 22-23). Considering this RFC, at step four the ALJ determined the plaintiff could not perform past relevant work but found at step five, through the use of Vocation Expert ("VE") testimony, that the plaintiff could perform jobs which exist in the national economy in significant numbers, such as sandblaster, factory helper, and washer. (R. 28-29).

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court is limited to an inquiry into whether substantial evidence exists to support the

findings of the Commissioner and whether the correct legal standards were applied. *Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). The court gives deference to the factual findings of the Commissioner but reviews questions of law *de novo*. *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1260 (11th Cir. 2007). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), rather it must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## III. DISCUSSION

The plaintiff contends the ALJ's determination of the plaintiff's RFC is not consistent with the requirements of medium work or the medical evidence. (Doc. 12 at 7-8). The plaintiff continues that, because he should have been found to be limited to light work, and based on his age, he then would have been found

disabled under the Medical Vocations Rules (the "Grids"), specifically Rule 202.06. (*Id*., at 9). Moreover, the plaintiff asserts the ALJ should have obtained a medical source opinion ("MSO") for assistance in determining the plaintiff's RFC. (*Id.*, at 10). The Commissioner responds that substantial evidence supports the ALJ's RFC determination, the ALJ properly relied on the VE's testimony rather than the Grids, and the ALJ was not obligated to obtain additional evidence from a medical expert. (Doc. 14 at 5, 14, 17, 21).

## A. Substantial Evidence Supports the ALJ's RFC Determination

Essentially, the plaintiff asserts that the ALJ's finding he can perform a limited range of medium work was in error, he should have been found limited to light work, and if he had been found limited to light work, the Grids would dictate a finding of "disabled." However, as the Eleventh Circuit has explained:

> "The grids are based on the claimant's residual functional capacity, age, education and work experience, and in cases where they apply, they direct a conclusion on the issue of whether the claimant is capable of performing substantial gainful activity in the national economy." [*Patterson v. Bowen*, 799 F.2d 1455, 1458 (11th Cir. 1986).] However, "[e]xclusive reliance on the grids is not appropriate either when [a] claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002–03 (11th Cir. 1987) (quotation omitted). "When the grids are not controlling, the preferred method of demonstrating job availability is through expert vocational testimony." *Id*. at 1003.

*Miller v. Comm'r of Soc. Sec.,* 241 F. App'x 631, 634 (11th Cir. 2007) (alterations

in orginal).

Here, because the ALJ determined the plaintiff could perform less than the full range of medium work, he could not rely on the Grids but instead was required to consider the testimony of a VE. *Miller*, 241 F. App'x at 635; *see also Watson v. Astrue*, 376 F. App'x 953, 956 (11th Cir. 2010).

The medical evidence supporting the plaintiff's claim of disability is sparse. It begins in November 2012 when the plaintiff was hospitalized for malignant hypertension. (R. 201). Those records reflect that the plaintiff had been diagnosed with high blood pressure ten years earlier but quit taking medication for this condition because the medication made him tired. (R. 203). During that hospitalization, the plaintiff was encouraged to quit smoking and was noted to be at risk for DTs due to his regular alcohol consumption. (R. 206-207). The plaintiff was discharged with prescriptions for hypertension medications and aspirin and was instructed to follow up with a primary care physician. (R. 201, 218, 222). He was released to activity as tolerated and noted to have a pain level of 0. (R. 220).

A consultative examination in August 2013 noted the plaintiff's complaints to be right knee and foot pain, high blood pressure, and COPD. (R. 243). That record noted the plaintiff had worked two weeks earlier putting a roof on a boathouse and one week prior cutting grass. (R. 244). The plaintiff was noted to walk without discomfort and with a normal gait, sat comfortably, and got on and

off the examination table without trouble. (*Id.*). Squatting and bending were limited by pain in the plaintiff's right knee. (R. 245). The diagnoses from that examination were out of control blood pressure with the plaintiff non-compliant with treatment, low back pain unsupported by any objective findings, skin cancer, right foot pain objectively supported by a limited range of motion, right knee pain, report of COPD with no objective findings, and nicotine addiction. (R. 247-248). The plaintiff was deemed able to walk and stand for up to six hours with no limitations on sitting, lifting, carrying, reaching, use of ladders and scaffolds, climbing, stooping, crouching, kneeling, and crawling. (R. 248). August 2013 X-rays found moderate osteoarthritic changes in the plaintiff's right knee, and mild scoliosis and severe degenerative changes in the plaintiff's lumbar spine. (R. 249-50).

The plaintiff began seeking routine medical care in September 2013. (R. 292). At the time, he was noted to suffer only from hypertension. (*Id.*). He had a normal range of motion in all extremities with no pain upon examination. (R. 294). The following month, the plaintiff's hypertension was stable. (R. 288). In February 2014, the plaintiff had multiple basal cell carcinomas removed from his arms and face. (R. 313). In April 2014, the plaintiff was noted to be anxious, was still smoking and drinking daily, and his medical problems were limited to hypertension, tobacco abuse, and an elevated PSA. (R. 279, 281). The plaintiff's

July 2014 visit listed the same issues. (R. 274). The October 2014 records reflect the plaintiff's medical problems were unchanged. (R. 265-266). His pain level was recorded as a 0 out of 10.[2] (R. 270). Those records also reflect the plaintiff was prescribed Chantix to help him quit smoking but never had that filled; he did not have a biopsy of his prostate because he did not have the money; he never followed up on the skin cancers because he had no money; and he did not fill out the paperwork for charity medical care. (R. 272). The following month, the plaintiff had been drinking prior to his medical appointment, still had not followed up on his skin cancers, and was noted to be anxious. (R. 262).

After reviewing all of the above medical records and the plaintiff's hearing testimony, the ALJ determined the evidence did not support the limitations the plaintiff claimed. (R. 26). The ALJ assigned significant weight to the limitations set forth by the consultative examiner but also found the plaintiff had more significant limitations based on the knee and back X-rays from August 2013. (R. 27). Hence, the ALJ ascribed greater limitations to the plaintiff based on the X-ray evidence and the plaintiff's allegations of knee and back pain. (R. 27-28). The plaintiff does not point to any error in the ALJ's analysis but instead alleges the ALJ erred in relying on VE testimony that the job of sandblaster could

---

[2] Two months later at his December 2014 hearing, the plaintiff stated his back and knee hurt too badly for him to work. (R. 48). The plaintiff also testified he could lift no more than a gallon or two of milk, rather than the 75 pounds he had stated in his functional report a year and a half earlier. (R. 55).

accommodate the RFC set forth by the ALJ.  (Doc. 12 at 8).

Specifically, the plaintiff asserts the X-rays of his right knee and lumbar spine demonstrate he is more limited than the ALJ determined.  (Doc. 12 at 8). The plaintiff states that medium work, with its requirement of lifting up to 50 pounds, requires flexibility of the knees and torso that cannot be reconciled with the ALJ's limitation of only occasional crouching.  (*Id.*).  Despite the VE's testimony that jobs with these very limitations exist in significant numbers in the national economy, the plaintiff argues the VE's testimony was incorrect, given the job duties for a sandblaster listed in the Dictionary of Occupational Titles ("DOT").  (*Id.*).  However, the plaintiff fails to point to any particular job duty that exceeds the RFC of the ALJ, instead suggesting that shoveling abrasives into a machine hopper would require more than occasional crouching.  (*Id.*).  The Commissioner responds by noting the DOT listing for sandblaster states crouching is not a job requirement.  (R. 14 at 20).  Moreover, the Commissioner also notes that the plaintiff does not contend the factory worker or washer jobs identified by the VE would not be available.  (*Id.*).  Because substantial evidence supports the ALJ's determination that the plaintiff could perform a limited range of medium work, the finding of not disabled, without reference to the Grids, is reasonable and supported by substantial evidence.  *See e.g*, *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015).

## B. Medical Source Opinion Not Required

The plaintiff argues the August 2013 X-rays demonstrate far greater limitations than those afforded by either the consultative examiner or the ALJ and, therefore, the ALJ should have obtained an MSO to clarify the record. (Doc. 12 at 10). However, the X-rays showed greater arthritis and degenerative disease than even the plaintiff's complaints or activities would suggest. The ALJ took into account the objective findings of the X-rays rather than the absence of subjective complaints of pain by the plaintiff. In contrast to the plaintiff's assertion this somehow required an MSO for clarification, it demonstrates that the ALJ properly ascribed limitations based on the X-rays and other evidence. *See Phillips v. Banhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) ("[T]he ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case."). Because the record contained sufficient evidence for the ALJ to make a determination, he was not required to obtain additional medical opinions. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007); *Smith v. Comm'r,* 501 F. App'x 875, 878 (11th Cir. 2012).

Ultimately, the plaintiff bears the burden of proving he is disabled and producing evidence in support of his claim. 20 C.F.R. § 416.912; *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The plaintiff failed in his burden. While the plaintiff asserts the ALJ "ignor[ed] any objective findings that would

support a less than medium RFC and an application of the MVR at the light level," no objective evidence in the record supports a limitation to the light level. (Doc. 12 at 11). Given this absence of evidence, the ALJ's determination that the plaintiff could perform a limited range of medium work was not error.

## IV. CONCLUSION

For the reasons set forth above, the court finds the decision of the Commissioner is supported by substantial evidence and due to be affirmed. An order in accordance will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 22nd day of January, 2018.

_Staci G. Cornelius_
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE